**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

        Plaintiff,

v.

RISHEEN DANIEL ROBINSON (01),

        Defendant.

Case No. 10-40037-01-DDC

**MEMORANDUM AND ORDER**
**ADDRESSING MOTION TO REDUCE SENTENCE**

    This matter is before the court on defendant Risheen Robinson's pro se Motion for a Reduction of Sentence (Doc. 167) and a "Supplement Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(1)(A)(i)" (Doc. 171). The Office of the District's Federal Public Defender entered an appearance and filed the latter of these two submissions. It asks the court to reduce Mr. Robinson's sentence to time served. The government doesn't oppose the motion, agreeing that the court should reduce Mr. Robinson's sentence from 262 months to time served. The court remanded Mr. Robinson to custody more than 12 years ago, on March 24, 2010.

    Mr. Robinson contends that the "combination" of a sentencing scheme that would no longer apply and "a defendant's unique circumstances" can "constitute extraordinary and compelling reasons" to reduce an offender's sentence under § 3582(c)(1)(A)(i). *See United States v. McGee*, 992 F.3d 1036, 1048 (10th Cir. 2021); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021). He argues a combination of reasons support the motion to reduce his sentence, including: he no longer would qualify as a career offender; the length of time he

already has served; his post-conviction rehabilitation; and the small quantity of crack cocaine (a total of 3.67 grams) involved in his offense.[1]

As background, a jury found Mr. Robinson guilty of one count of possession with intent to distribute a mixture containing a detectable amount of crack cocaine, a violation of 21 U.S.C. § 841(b)(1)(C).  Doc. 91.  The Presentence Investigation Report (PSR) classified Mr. Robinson as a career offender under U.S. SENT'G GUIDELINES MANUAL § 4B1.1 (2010).  Doc. 87 (PSR) at ¶ 36.  *See also id.* at 7 (noting application of Manual effective November 1, 2010).  The PSR reached this conclusion because, under then prevailing law, Mr. Robinson's pre-2010 Kansas convictions for possession of a controlled substance with intent to distribute qualified as predicate offenses.  PSR at ¶¶ 36, 45–47.  This career offender designation more than doubled Mr. Robinson's offense level, raising it from 16 to 34.  *Id.* at ¶¶ 35 & 36.  This increase derivatively increased his Guidelines' range from 46–57 months to 262–327 months.  *Id.* at ¶ 75.  The court sentenced Mr. Robinson to 262 months in custody, the bottom end of his Guidelines' range.

If sentenced today, Mr. Robinson no longer would qualify as a career offender because neither of his Kansas drug convictions would qualify as one of the two predicate offenses required by § 4B1.1(a).  *See United States v. Madkins*, 866 F.3d 1136, 1143–48 (10th Cir. 2017) (holding that separate Kansas convictions for possession with intent to sell marijuana and, later, cocaine don't qualify as predicate offenses under § 4B1.1).  Likewise, no conviction reported in Mr. Robinson's PSR still would qualify as a crime of violence.  *See* PSR at ¶ 36; *see also United States v. Adams*, 40 F.4th 1162, 1165–66, 1171 (10th Cir. 2022).  And even if one of Mr.

---

[1]       The 3.67 grams figure comes from Mr. Robinson's Presentence Investigation Report.  *See* Doc. 87 at ¶ 24.  This quantity represents all his relevant conduct, *i.e.*, "[t]he total amount attributable to the defendant . . . ."  *Id*.  In other words, it's not just the quantity involved directly in his offense conduct.

Robinson's convictions qualified as a crime of violence, it would furnish just one of the two predicate offenses required by § 4B1.1(a).[2]  Absent his career offender designation, Mr. Robinson would have qualified for a separate reduction, the one promulgated under Amendment 782.  That amendment would have lowered his Guidelines' range another two levels.  If sentenced today, Mr. Robinson would face a Guidelines' range of 37 to 46 months.  Mr. Robinson has already served more than 12 years of his 21.8 years sentence.

The Circuit's holdings in *McGee* and *Maumau* outline the analysis that district courts must apply when asked—as defendant does here—to reduce an inmate's sentence under § 3582(c)(1)(A)(i).  Under this test, a district court may grant such a motion "only if three requirements are met[.]"  *Maumau*, 993 F.3d at 831 (citing *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)).  The next three sections apply these three requirements to Mr. Robinson's case.[3]

## 1. The district court must decide whether "extraordinary and compelling reasons warrant" the requested reduction.

The first step of the analysis asks whether defendant's motion satisfies the conditions imposed by the plain language of § 3582(c).  That is, do "extraordinary and compelling reasons warrant" the requested reduction?  *Maumau*, 993 F.3d at 831.  *Maumau* rejects the idea that the

---

[2]    There's a bit of a wrinkle in Mr. Robinson's PSR.  The Career Offender discussion in paragraph 36 of the PSR refers to a conviction reported in "paragraph 44" as a crime of violence.  But paragraph 44 reports to a simple battery conviction on which the defendant received a six-month sentence.  The court believes the PSR's cross-reference meant to refer to the aggravated battery conviction reported in paragraph 42 which, until the recent holding in *Adams*, qualified as a crime of violence.

[3]    Mr. Robinson's original motion, filed on October 31, 2022, asserts that he submitted a compassionate release request to his Warden on August 3 of the same year.  Doc. 167 at 1 (referencing Exhibit A to his motion).  This filing also asserts that his request  "went unanswered."  *Id.*  Given the passage of time between the date when Exhibit A was submitted and Mr. Robinson's late October filing, the court infers that Mr. Robinson exhausted his administrative remedies before filing his motion, as § 3582(c)(1)(A) requires.  In any event, the government does not assert exhaustion as a defense to the motion and thus has waived that issue.  *United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021) (holding exhaustion is a claims processing rule that government can waive).

Sentencing Commission—and the Commission alone—can define what qualifies as "extraordinary and compelling." *Id*. at 832. Instead, the Circuit held, district courts "possess the authority to determine for themselves" what qualifies as extraordinary and compelling. *Id*.

*Maumau* and *McGee* recognize that a situation like Mr. Robinson's may qualify for this finding. For instance, *Maumau*'s defendant was serving a 55-year sentence under the stacking mechanism required by an earlier version of 18 U.S.C. § 924(c). 993 F.3d at 824 (explaining § 924(c) "required" district court to impose consecutive 25-year sentences for second or subsequent convictions under § 924(c) "even if those convictions occurred at the same time as a defendant's first conviction under the statute"). The Congress amended § 924(c) in 2018 by passing the First Step Act. After this amendment, no consecutive sentence was required for § 924(c) convictions unless an earlier § 924(c) conviction was final when defendant was convicted of a second § 924(c) violation. 993 F.3d at 826.

But the First Step Act didn't help Mr. Maumau because the act limited the retroactivity permitted by the First Step Act's amendment in a fashion that excluded Mr. Maumau. He responded by filing a motion under § 3582(c)(1), arguing that his situation qualified as extraordinary and compelling. The district court agreed, concluding, among other things, that "the fact that he would not receive the same sentence if the crime occurred today" represented "extraordinary and compelling grounds to reduce his sentence." 993 F.3d at 828 (quoting district court's order) (quotation cleaned up). The Circuit affirmed, concluding that § 3582 authorized the district court's finding of extraordinary and compelling circumstances.

*Maumau*'s sentence shares some similarities to Mr. Robinson's situation here. Both defendants received a sentence that differed—and differed substantially—from the sentence they would receive if sentenced at the time of their § 3582(c) motion. Mr. Maumau, if sentenced in

2020 instead of 2012, wouldn't have faced statutorily mandated consecutive—"stacked"—terms of 25 years because of the amendment to § 924(c).  Likewise, Mr. Robinson wouldn't qualify today as a career offender and thus would face a Guidelines' range more than 200 months shorter than the one calculated and applied during his 2010 sentencing hearing.  In short, both cases present a substantial "then vs. now" disparity.  But there are some differences.

Mr. Maumau's original sentence resulted from *statutorily* mandated consecutive sentences.  993 F.3d at 826 ("Maumau's 57-year sentence included a seven-year mandatory minimum sentence for the first § 924(c) conviction and twenty-five year mandatory minimum sentences for both the second and third [§ 924(c)] convictions, with all of these sentences to run consecutively.")  The sentencing court in *Maumau* expressed dissatisfaction with the mandated sentence, commenting—both at sentencing and again later—on the "unjustness of the mandatory sentence" that the court had to impose.  *United States v. Maumau*, No. 2:08-cr-758-TC-11, 2020 WL 806121 at *5 (D. Utah Feb. 18, 2020).  And later, seven years after imposing his original sentence, the sentencing court submitted a letter to the United States Attorney.  This letter confirmed the court's continuing "distaste with the mandatory sentence [the court] was required to impose[,]" and "urge[d] [the United States Attorney] to do everything in [his] discretionary prosecutorial power to correct this injustice."  *Id.*

Mr. Robinson directs the court to no such dynamics in his case.  No statute mandated this court's sentence of Mr. Robinson.  It's true that his career offender designation dramatically increased his Guidelines' calculation and range, but it didn't confine the court's authority to impose a lighter sentence.  *See* Doc. 87 (PSR) at ¶¶ 74–75 (calculating Mr. Robinson's Guidelines' range but noting no statutory minimum sentence); *but see id.* at 1 (noting that 21 U.S.C. § 851 had enhanced defendant's *maximum* sentence to 30 years).  The court sentenced

Mr. Robinson in 2010 and, by then, the *Booker* decision[4] had rendered the Sentencing Guidelines, in effect, advisory.  This court thus possessed all the discretion it needed to nullify the effect of Mr. Robinson's career offender designation and sentence him below, even well below his enhanced Guidelines' range.  But it didn't.  And the parties note nothing suggesting that the court felt constrained to impose a sentence it believed was unjust.[5]

In sum, the analysis of Mr. Robinson's situation is something of a mixed batch.  That is, Mr. Robinson's sentence resembles the situations presented in *Maumau* and *McGee* in some respects.  He, like those defendants, would face substantially different sentencing dynamics if sentenced today.

But Mr. Robinson's situation differs from those earlier cases in other important respects.  For one thing, a statutory mandate didn't produce Mr. Robinson's sentence.  This court just didn't exercise its sentencing discretion in Mr. Robinson's favor, however.  For another thing, the force producing the disparity in his case differed from the one producing the disparities in *Maumau* and *McGee*.  The disparity in those cases stemmed from Congressional action, *i.e.*, statutory amendments in the First Step Act that didn't extend to those defendants because of the amendment's limited retroactivity provision.  The disparity for Mr. Robinson came from our Circuit's precedent interpreting the effect of state court convictions under the Sentencing Guidelines.

---

[4]        *United States v. Booker*, 543 U.S. 220 (2005).

[5]        The sentencing dynamics in *McGee* are more like the ones in *Maumau* than they are in Mr. Robinson's case.  *See* 992 F.3d at 1038–39 (explaining that defendant's 2000 conviction under 21 U.S.C. § 841(b) after two earlier drug felonies subjected him to a mandatory life sentence).  *See also id.* at 1039 (explaining that First Step Act had reduced the mandatory sentence for such convictions from life to 25 years, but its limited retroactivity provision didn't reach Mr. McGee's sentence).

While the court finds this question closer than it first appears, the court finds, on balance, that Mr. Robinson has satisfied his burden to establish an "extraordinary and compelling reason" to reduce his sentence. Three things drive this conclusion. First, Mr. Robinson has shown that a sentencing scheme contributed to his sentence and that scheme no longer would apply today. Second, he has shown that this outdated scheme likely produced—or at least meaningfully contributed to a dramatic sentencing disparity. Last, Mr. Robinson has shown a dramatic disparity between: (a) the scale of his wrongful conduct (including both the conduct that produced his conviction and his relevant conduct); and (b) the weight of his sentence. The court thus finds that Mr. Robinson has satisfied the first of *Maumau* and *McGee*'s requirements.

This conclusion doesn't end the analysis, however. The court's analysis thus turns to the second and third of the *Maumau*/*McGee* requirements, below.

### 2. The district court must decide whether the requested reduction is consistent with "applicable policy statements issued by the Sentencing Commission."

This second step in the analysis is simpler. As explained in part 1, *Maumau* and *McGee* recognize that district courts have authority to decide what is extraordinary and compelling. But they also hold that "this authority is effectively circumscribed by the second part of the statutory test, *i.e.*, the requirement that a district court find that a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." *Maumau*, 993 F.3d at 834; *McGee*, 992 F.2d at 1045.

As it turns out, though, this requirement is a hollow one—at least for now. *Maumau* engaged in a lengthy analysis about the relationship between § 3582(c)(1)—as amended by the First Step Act—and the Sentencing Commission's policy statements. *See generally* 993 F.3d at 834–37. Specifically, the Circuit reviewed the Commission's policy statements before that act's amendment and interpreted the Commission's failure "to issue a post-First Step Act policy

statement recognizing the ability of defendants to file their own motions for sentence reduction." *Id*. at 836. There's no need to repeat that analysis here. Instead, the court notes merely that the Circuit concluded that the only pertinent policy statement "is applicable only to motions filed by the Director of the BOP, and not to motions filed directly by defendants." *Id*. at 837. *See also id*. at 836–37 (explaining that Tenth Circuit was joining view of Second, Fourth, Sixth, and Seventh Circuits and collecting cases). Consequently, "the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13[,]" does "not constrain[ ]" a district court's finding of extraordinary and compelling reasons. *Id*. So, Mr. Robinson's motion complies with the second requirement of *Maumau*/*McGee* because there aren't any "applicable policy statements."

### 3. The court must "consider[ ] the factors set forth in § 3553(a) to the extent that they are applicable."

The last factor that *Maumau* and *McGee* direct the court to consider are "the factors set forth in § 3553(a) to the extent that they are applicable[.]"  993 F.3d at 831 (quoting § 3582(c)(1)(A)(ii)). Things get trickier here.

Mr. Robinson's jury trial ended on August 26, 2010. Senior United States District Judge Richard D. Rogers, now deceased, presided over Mr. Robinson's trial, and sentenced him. And except for deciding some of Mr. Robinson's post-conviction motions, the undersigned judge has had no contact with him or his case.

To be sure, the Presentence Investigation Report provides some information germane to the sentencing factors in § 3553(a). For instance, the PSR describes "The Offense Conduct" and thus enables the court to consider the nature and circumstances of defendant's crime. *Compare* Doc. 87 at ¶¶ 13–23, *with* § 3553(a)(1) ("nature and circumstances of the offense"). Trial transcripts provide more detail. *See* Docs. 101–103 (trial transcript) & 106 (sentencing hearing). Other portions of the PSR describe aspects of Mr. Robinson's history and characteristics. *See*

Doc. 87 at ¶¶ 42–48 (Criminal History), ¶¶ 59–73 ("OFFENDER CHARACTERISTICS").  But the PSR's author wrote and revised this PSR during November and December of 2010 and the court has limited access to more recent information.[6]  And given the court's statutory duty and the importance of this decision to Mr. Robinson and the public, the court is unwilling to proceed on stale and incomplete information.

Hoping to fill this gap in the most efficient and effective way possible, the court has elected to borrow—with some revisions—the method used by the district court in *Maumau*.  There, the Utah court ordered Mr. Maumau "brought to the district, where he [could] be interviewed by Probation and . . . have an opportunity to address the Court."  993 F.3d at 828 (quoting district court's order).  The court adopts the concept of this approach but elects to forego the delay that transporting him to the district might produce.

Instead, the court directs the prosecutors in this case to communicate with the Bureau of Prisons (a fellow constituent of the Department of Justice) to arrange for a video or telephone interview with the United States Probation Office.  This interview's aim is to provide a supplement to Mr. Robinson's PSR.[7]  In addition, the court directs Mr. Robinson's counsel to communicate with him and determine whether he wishes to address the court personally.  Counsel must report Mr. Robinson's decision to counsel for the United States.  If Mr. Robinson elects to make a personal statement, counsel of record must cooperate with Courtroom Deputy

---

[6]    Mr. Robinson's counsel has worked to plug this gap with the Supplement's statements about him. Also, she has provided two exhibits—BOP records about Mr. Robinson.  *See* Doc. 171 at 4–7 & Doc. 171-1.  While this information is helpful, the court doesn't derive enough understanding from it to decide the fundamental questions it must answer.  *I.e.*, Should Mr. Robinson receive a reduced sentence?  If so, will a time-served sentence provide a sentence that is sufficient but not greater than necessary?

[7]    The court understands that the Bureau of Prisons has held Mr. Robinson in custody continuously since his original PSR in 2010.  Still, Mr. Robinson's motion reports about his programming efforts, his plans (if released), and changes in his values and thinking patterns.  The court accepts those statements but seeks a more fulsome and direct report about those subjects.

Megan Garrett, megan_garrett@ksd.uscourts.gov, to schedule this opportunity. Finally, and though the court doesn't view this opportunity to address the court as a new sentencing hearing, Mr. Robinson may prefer to make this statement in person in one of our courtrooms. If so, the court will honor his choice.

### Conclusion

The court finds that Mr. Robinson, if sentenced today, is likely to receive a fraction of his current sentence. Also, Mr. Robinson's original conduct in this case, though properly producing his conviction, involved limited criminal conduct. Thus, the court answers the first of the three questions specified by *Maumau* and *McGee* with its finding that Mr. Robinson has shown extraordinary and compelling reasons to reduce his sentence. The second question is neutral because no Policy Statement from the Sentencing Commission applies to Mr. Robinson's situation. And the third inquiry—the product derived from applying the sentencing factors in § 3553(a)—requires more recent information than is available to the court currently.

**THEREFORE, THE COURT ORDERS** the United States Probation Office to conduct an interview of Mr. Robinson to prepare a supplemental report inquiring about subjects deemed pertinent by 18 U.S.C. § 3553(a). The Probation Office may conduct this interview by video or telephone.

**THE COURT FURTHER ORDERS** the Department of Justice attorneys who are counsel of record for the United States to coordinate logistical arrangements with the Bureau of Prisons for this interview, which must occur within 20 days of this Order's entry (unless extended by subsequent Order).

**THE COURT FURTHER ORDERS** counsel for Mr. Robinson to consult with him and determine whether he wishes to address the court personally as part of his request for a reduced

sentence.  If he does, defense counsel must coordinate with counsel for the United States (who

must coordinate with the Bureau of Prisons and the United States Marshals Service) and

Courtroom Deputy Megan Garrett to schedule a video conference for that purpose.  If Mr.

Robinson chooses to make this statement in person, the United States must transport him with all

appropriate speed to this Judicial District for that purpose.

**IT IS SO ORDERED.**

**Dated this 30th day of December, 2022, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**

**Daniel D. Crabtree**

**United States District Judge**
